[No. H018333. Sixth Dist. June 28, 2000.]

LUDGATE INSURANCE COMPANY, LTD., Plaintiff, Cross-defendant and Respondent, v.
LOCKHEED MARTIN CORPORATION, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Troop, Steuber, Pasich, Reddick & Tobey, David W. Steuber, Curtis D. Porterfield, Clyde M. Hettrick, Whitney Stein and Catherine Rivard for Defendant, Cross-complainant and Appellant.

Booth & Banning, Forrest Booth, Kurt Micklow and Elizabeth Palmer for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**PREMO, Acting P. J.**—Defendant and cross-complainant Lockheed Martin Corporation (hereafter, Lockheed) appeals from a judgment on the pleadings entered in favor of plaintiff and cross-defendant Ludgate Insurance Company, Ltd. (hereafter, Ludgate), and from an order denying Lockheed's

motion to require Ludgate to post a bond pursuant to Insurance Code sections 1616 and 1620.[1]

We reverse in part, and affirm in part.

### PROCEDURAL HISTORY

Ludgate is one of several plaintiffs that filed the present action for declaratory relief against Lockheed. The other plaintiffs are members of underwriting syndicates at Lloyd's, London. Ludgate and the other plaintiffs were designated below for purposes of this action as "Procter and Companies." We will retain that designation in this appeal.

Procter and Companies, as a group of individual London market insurers and syndicates, issued primary and excess liability insurance policies, "each for itself and not for any others," to Lockheed from approximately 1940 through 1985. In December 1995, while this matter was pending below, Ludgate separated itself from Procter and Companies as a plaintiff group, and pursued its claim against Lockheed on its own as a separate and independent plaintiff.

Relevantly restated to pertain to Ludgate alone as a separate and independent plaintiff, the first amended complaint for declaratory relief against Lockheed alleged in pertinent part:

"26. An actual and justiciable controversy exists between [Ludgate] and Lockheed regarding whether a defense obligation is owed by [Ludgate] to Lockheed under either the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government.

"27. [Ludgate] desire[s] a judicial determination of the rights and duties of the parties under the Primary Policies and the Excess Policies, and a declaration that no defense obligation is owed by [Ludgate] to Lockheed under the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government.

"28. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties under the Primary Policies and the Excess Policies with respect to whether a defense obligation is owed by [Ludgate] to Lockheed with respect to the Environmental Claims for

---

[1]Further statutory references are to the Insurance Code unless otherwise noted.

defense expenses which have been or will be paid or reimbursed by the United States government. [¶] . . . [¶]

"55. An actual and justiciable controversy exists between [Ludgate] and Lockheed over the rights, duties and obligations of the . . . Primary Policies and the Excess Policies with respect to coverage for defense and indemnity for the Environmental Claims . . . set forth in . . . this First Amended Complaint.

"56. [Ludgate] desire[s] a judicial determination of the rights and duties of the parties with respect to defense and indemnity under the Primary Policies and the Excess Policies, a general declaration that there is no coverage for either defense or indemnity for Lockheed's Environmental Claims under the terms, conditions, exclusions and provisions of the Primary Policies and the Excess Policies . . . .

"57. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties under the Primary Policies and the Excess Policies with respect to defense and indemnity of the Environmental Claims . . . ."

In response, Lockheed filed its first amended cross-complaint for declaratory relief and breach of contract, in which it expressed agreement with Ludgate that "[e]ach cause of action asserted in this cross-complaint arises out of the same transaction, occurrence, or series of transactions or occurrences as one or more of the causes of action asserted by plaintiffs against Lockheed in this matter."

Like Ludgate's first amended complaint, Lockheed's first amended cross-complaint sought "a judgment declaring the present and future rights, duties, and liabilities of the parties under the subject insurance policies with respect to certain present and future claims by the United States, various other governmental entities, and/or private parties alleging that Lockheed is legally obligated to them for damages because of bodily injury, personal injury, and/or property damage in connection with environmental contamination." Specifically, Lockheed sought "a declaration that the terms of the subject policies obligate cross-defendant[] [Ludgate] to defend and indemnify Lockheed with respect to the claims described in paragraphs 20 through 86 of this cross-complaint . . . ."

With particular reference to the Burbank site, which is the relevant site for purposes of this appeal, Lockheed's first amended cross-complaint alleged that "[a]n actual controversy exists as to the rights and duties of the parties

under the Policies in connection with the Burbank Site in that Lockheed contends, and seeks a declaratory judgment declaring that: [¶] (a) [Ludgate] issued one or more insurance Policies obligating it to indemnify Lockheed against those Underlying Claims concerning the Burbank Site; [¶] (b) [Ludgate] has wrongfully refused, failed or disclaimed any responsibility to fulfill its obligations under its respective Policies to completely indemnify Lockheed against those Underlying Claims concerning the Burbank Site; and [¶] (c) Lockheed is entitled to complete indemnity from [Ludgate] and to be reimbursed by and to receive payment from [Ludgate] for all sums which Lockheed becomes legally obligated to pay in connection with the Burbank Site."

In its answer to Lockheed's first amended cross-complaint, Ludgate denied "each and every allegation contained in Lockheed's unverified First Amended Cross-Complaint," and claimed a number of affirmative defenses, including the affirmative defense that "the full limits of [the] underlying policies [issued to Lockheed] have not been exhausted; therefore, no duty or obligation under the excess policies allegedly issued to Lockheed and subscribed by [Ludgate] has arisen."

Lockheed amended its first amended cross-complaint four times thereafter, the last being the fifth amended and supplemental cross-complaint for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. Throughout all the amendments, Lockheed insisted on the need for a judgment "declaring the present and future rights, duties, and liabilities of the parties under the subject insurance policies with respect to certain present and future claims by the United States, various state and local governmental entities, and/or private parties alleging that Lockheed is legally obligated to them for damages because of bodily injury, personal injury, and/or property damage in connection with environmental contamination," and that "the terms of the subject policies obligate [Ludgate] to defend and/or indemnify Lockheed with respect to the . . . 'Underlying Claims.' "

As to the Burbank site, all the amendments stated that "[a]n actual controversy exists as to the rights and duties of the parties under the Policies in connection with the Burbank Site in that Lockheed contends, and seeks a declaratory judgment declaring that: [¶]₀ (a) [Ludgate] issued one or more insurance Policies obligating it to indemnify Lockheed against those Underlying Claims concerning the Burbank Site; [¶] (b) [Ludgate] has wrongfully refused, failed or disclaimed any responsibility to fulfill its obligations under its respective Policies to completely indemnify Lockheed against those Underlying Claims concerning the Burbank Site; and [¶] (c) Lockheed is

entitled to complete indemnity from [Ludgate] and to be reimbursed by and to receive payment from [Ludgate] for all sums which Lockheed becomes legally obligated to pay in connection with the Burbank Site."

On February 16, 1995, Lockheed filed a motion to compel Ludgate to post a bond pursuant to section 1616 et seq. On June 29, 1995, the trial court denied the motion. Lockheed's motion for reconsideration was also denied.

In December 1995, following the denial of Lockheed's bond motion, Ludgate separated itself from the rest of the Procter and Companies group and hired its own counsel to represent it in this action.

In its fifth amended cross-complaint, Lockheed set forth a description of two allocation schemes demonstrating how under each scheme Ludgate's excess policies would be reached. Pursuant to Lockheed's 30th cause of action, Lockheed's claim against Ludgate was reduced to a single claim for declaratory relief, and only with respect to the Burbank site. Lockheed's 30th cause of action states:

"198. Lockheed hereby incorporates by reference the allegations of paragraphs 1 through 125, inclusive, as though fully set forth herein.

"199. An actual controversy exists as to the rights and duties of the parties under the Primary and Excess Policies in connection with the Burbank Site in that Lockheed contends, and seeks a declaratory judgment declaring that:

"(a) Each of the cross-defendant insurers issued one or more insurance Policies, as identified in Exhibit C hereto, obligating it to indemnify Lockheed against those Underlying Claims concerning the Burbank Site;

"(b) Each of the cross-defendant insurers has wrongfully refused, failed or disclaimed any responsibility to fulfill its obligations under its respective Policies to completely indemnify Lockheed against those Underlying Claims concerning the Burbank Site; and

"(c) Lockheed is entitled to complete indemnity from cross-defendants and to be reimbursed by and to receive payment from cross-defendants for all sums which Lockheed becomes legally obligated to pay in connection with the Burbank Site."

The AIU Group and Old Republic cross-defendants, along with other excess insurers (hereafter, collectively, AIU Group), demurred to Lockheed's fifth amended cross-complaint on the ground that it had failed to state

a cause of action, claiming that Lockheed had not alleged actual exhaustion and had failed to demonstrate a reasonable probability of exhaustion. For their part, Procter and Companies moved to strike Lockheed's claim for declaratory relief as to the Burbank site on the ground that such claims could not possibly reach their excess insurance policies. Procter and Companies argued that "Lockheed's coverage charts detail the insurance policies that allegedly will be 'triggered by the Burbank Claim,'" and that "[n]otably absent are 49 of Procter and Companies' excess policies." Consequently, "Lockheed's request for relief on these policies is 'improper,' 'irrelevant,' and '. . . not supported by the allegations of the complaint or cross-complaint.'" Ludgate joined in Procter and Companies' motion.

On May 19, 1997, the trial court sustained AIU Group's demurrer, reasoning that "Lockheed has failed to allege facts sufficient to state a cause of action for declaratory relief, as sought in the 30th cause of action." The court also granted Procter and Companies's motion to strike on the basis that the 30th cause of action "is too uncertain and otherwise fails to state a claim for relief." Stating that "the question before this Court is whether the 30th cause of action adequately alleges the reasonable likelihood of reaching the excess policies of each of these excess insurer parties, based on allegations that the primary coverage for those years will actually be exhausted," the court, noting that "Lockheed alleges its total damages at Burbank will be $394.9 million," concluded that Lockheed had not "adequately pled the exhaustion of the underlying layers as to each excess insurer it seeks to reach" in that "Lockheed has failed to allege facts to show, e.g., that all primary coverage for this site will actually be exhausted, or that the terms and conditions of each excess policy it seeks to implicate provide an exception to that requirement . . . ."

Procter and Companies filed their answer to Lockheed's fifth amended cross-complaint, and then, seeking uniform application of the trial court's demurrer order, moved for judgment on the pleadings as to the balance of the London market excess policies included in Lockheed's cross-complaint. Ludgate again joined in the motion.

On September 11, 1997, the trial court granted the motion, stating: "Procter and Ludgate are presently requesting that a motion for judgment on the pleadings be granted as to all of Procter's and Ludgate's excess policies implicated in the . . . 30th cause[] of action of Lockheed's Fifth Amended Cross-Complaint. As to Ludgate, the Court determines that it is appropriate to grant Ludgate's motion for judgment on the pleadings as to the . . . 30th cause[] of action. . . . [¶] The reasons for granting Ludgate's judgment on the pleadings and the motion to strike as to the Procter excess policies are

the same as the reasons articulated in the Court's previous rulings on demurrers and motions to strike directed to the 30th cause of action."

On February 5, 1998, Ludgate moved to dismiss its claims against Lockheed. On February 10, 1998, judgment on the pleadings was entered against Lockheed.

### CONTENTIONS

Lockheed contends:

1. Because Lockheed satisfied the requirements of stating a claim for declaratory relief against Ludgate, the trial court's decision to the contrary constitutes clear error.

2. The trial court's denial of Lockheed's bond motion was a clear abuse of discretion, representing flagrant disregard of the express terms of the Insurance Code and the legislative intent behind it.

### DISCUSSION

#### Standard of Review

■ "Review of a judgment on the pleadings requires the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action. [Citation.] For purposes of this review, we accept as true all material facts alleged in the complaint. [Citation.] Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion. [Citation.]" (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].)

Furthermore, "[a] motion for judgment on the pleadings is analogous to a general demurrer. [Citation.] The task of this court is to determine whether the complaint states a cause of action. All facts alleged in the complaint are deemed admitted, and we give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context. [Citations.] We are not concerned with a plaintiff's possible inability to prove the claims made in the complaint, the allegations of which are accepted as true and liberally construed with a view toward attaining substantial justice. [Citations.]" (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622].)

Ludgate's contention that the applicable standard of review is abuse of discretion is incorrect. The judgment that is the subject of this appeal is not a declaratory judgment under Code of Civil Procedure section 1060, which is reviewed for abuse of discretion. (*Application Group, Inc. v. Hunter*

*Group, Inc.* (1998) 61 Cal.App.4th 881, 892-893 [72 Cal.Rptr.2d 73].) Rather, it is a judgment on the pleadings, which is reviewed "de novo and as a matter of law." (*Ott v. Alfa-Laval Agri, Inc., supra*, 31 Cal.App.4th at p. 1448.) A trial court has no discretion in granting or denying a motion for judgment on the pleadings. This is because in a judgment on the pleadings, "we accept as true all material facts alleged in the complaint." (*Ibid.*) The facts alleged being deemed true, the only question for determination is one of law. On a pure question of law, trial courts have no discretion. They must, without choice, apply the law correctly.

### *Judgment on the Pleadings*

Lockheed contends that because it satisfied the requirements of stating a claim for declaratory relief against Ludgate, the trial court's decision to the contrary constitutes clear error. We agree.

Code of Civil Procedure section 438 provides in pertinent part: "The motion [for judgment on the pleadings] may only be made on one of the following grounds: [¶] . . . [¶] (B) If the moving party is a defendant, that either of the following conditions exist: [¶] (i) The court has no jurisdiction of the subject of the cause of action alleged in the complaint. [¶] (ii) The complaint does not state facts sufficient to constitute a cause of action against that defendant. [¶] . . . [¶] (d) The grounds for motion provided for in this section shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice."

Here, Ludgate itself initiated the instant action by filing the first amended complaint against Lockheed. In pertinent part, that complaint alleged that "[a]n actual and justiciable controversy exists between [Ludgate] and Lockheed regarding whether a defense obligation is owed by [Ludgate] to Lockheed under either the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government;" that Ludgate desires "a judicial determination of the rights and duties of the parties under the Primary Policies and the Excess Policies, and a declaration that no defense obligation is owed by [Ludgate] to Lockheed under the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government;" and that "[a] judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties under the Primary Policies and the Excess Policies with respect to whether a defense obligation is owed by Procter and Companies to Lockheed with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government."

Ludgate's first amended complaint further alleged that "[a]n actual and justiciable controversy exists between [Ludgate] and Lockheed over the rights, duties and obligations of the . . . Primary Policies and the Excess Policies with respect to coverage for defense and indemnity for the Environmental Claims," and that Ludgate desires "a judicial determination of the rights and duties of the parties with respect to defense and indemnity under the Primary Policies and the Excess Policies, a general declaration that there is no coverage for either defense or indemnity for Lockheed's Environmental Claims under the terms, conditions, exclusions and provisions of the Primary Policies and the Excess Policies . . . ." Ludgate additionally alleged that "[a] judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties under the Primary Policies and the Excess Policies with respect to defense and indemnity of the Environmental Claims, as set forth more fully in this Sixth Cause of Action."

Ludgate is bound by those allegations. It cannot now be permitted to deny the existence of an actual controversy between itself and Lockheed "regarding whether a defense obligation is owed by [Ludgate] to Lockheed under either the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government," or that "[a]n actual and justiciable controversy exists between [Ludgate] and Lockheed over the rights, duties and obligations of the . . . Primary Policies and the Excess Policies with respect to coverage for defense and indemnity for the Environmental Claims . . . ."

Ludgate's allegation of the existence of an actual controversy between itself and Lockheed "regarding whether a defense obligation is owed by [Ludgate] to Lockheed under either the Primary Policies or the Excess Policies with respect to the Environmental Claims for defense expenses which have been or will be paid or reimbursed by the United States government," and "over the rights, duties and obligations of the . . . Primary Policies and the Excess Policies with respect to coverage for defense and indemnity for the Environmental Claims," was not controverted by Lockheed. To the contrary, Lockheed admitted that "[e]ach cause of action asserted in this cross-complaint arises out of the same transaction, occurrence, or series of transactions or occurrences as one or more of the causes of action asserted by [Ludgate] against Lockheed in this matter." Lockheed therefore joined Ludgate in seeking "a judgment declaring the present and future rights, duties, and liabilities of the parties under the subject insurance policies with respect to certain present and future claims by the United States, various other governmental entities, and/or private parties alleging that Lockheed is legally obligated to them for damages because of bodily

injury, personal injury, and/or property damage in connection with environmental contamination."

Because Ludgate alleged and represented to the court that "[a]n actual and justiciable controversy exists between [Ludgate] and Lockheed over the rights, duties and obligations of the . . . Primary Policies and the Excess Policies," and that "a judicial determination of the rights and duties of the parties with respect to defense and indemnity under the Primary Policies and the Excess Policies," was necessary to resolve the actual controversy, a claim that was not disputed by Lockheed, the issue was properly joined and a sufficient cause of action for declaratory relief was stated both by Ludgate's first amended complaint and Lockheed's fifth amended cross-complaint.

The existence of an "actual controversy relating to the legal rights and duties of the respective parties," suffices to maintain an action for declaratory relief. (Code Civ. Proc., § 1060.) Code of Civil Procedure section 1060 is clear: "Any person interested under a written instrument, . . . or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

Ludgate's insistence on specific allegations demonstrating exhaustion of primary coverage was unnecessary and improper. It was unnecessary because by alleging in its first amended complaint and representing to the court the existence of an actual and justiciable controversy, Ludgate waived further demonstration of the existence of that controversy.

Further, by moving for a judgment on the pleadings, Ludgate admitted, for purposes of that motion, all the material allegations in Lockheed's fifth amended complaint, including the allegation that "an actual controversy exists [between Lockheed and Ludgate] as to the rights and duties of the parties under the Policies in connection with the Burbank Site."

Ludgate's insistence was also improper because Ludgate itself initiated the declaratory relief action on the basis of its claim that an actual controversy exists between itself and Lockheed. Ludgate therefore carried the burden, no less than Lockheed, of demonstrating actual controversy. The actual controversy that Lockheed was referring to in its first through the fifth

amended cross-complaint was the very same actual controversy that Ludgate claimed in its first amended complaint. Lockheed was specific in stating in the first through the fifth amended cross-complaints that "[e]ach cause of action asserted in this cross-complaint arises out of the same transaction, occurrence, or series of transactions or occurrences as one or more of the causes of action asserted by [Ludgate] against Lockheed in this matter."

Code of Civil Procedure section 1060 does not support the trial court's conclusion that Lockheed needed to show a reasonable probability of exhaustion of the primary coverage before it could state a cause of action for declaratory relief against Ludgate on its excess coverage. All that Code of Civil Procedure section 1060 requires is that there be "actual controversy relating to the legal rights and duties of the respective parties." Exhaustion of underlying limits, while necessary to entitle the insured to recover on the excess policy, is not necessary to create actual controversy. Exhaustion is merely an issue of proof and entitlement to recovery, not of pleading. ▆ A cardinal rule of pleading is that only the ultimate facts need be alleged. (*Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 719 [104 Cal.Rptr. 897].) ▆ In a declaratory relief action, the ultimate facts are those facts establishing the existence of an actual controversy. (Code Civ. Proc., § 1060.) Facts showing exhaustion of the underlying limits merely establish the insured's right to recovery, not whether an actual controversy exists between the parties. However, to be entitled to declaratory relief, a party need not establish that it is also entitled to a favorable judgment. ▆ As stated in *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947 [148 Cal.Rptr. 379, 582 P.2d 970]: "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. [Citations.] If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to favorable declaration. [Citations.]"

▆ Regardless, Lockheed in fact sufficiently alleged exhaustion of underlying limits in its fifth amended cross-complaint. This is clear from paragraphs 76 and 77 of that pleading, which read: "76. In addition to substantial, on-going defense costs not including internal costs, Lockheed has already incurred at least $140.6 million in indemnity costs in compliance with the governmental orders and directives. Based upon Lockheed's experience and the experience and advice of its legal and environmental consultants and as set forth in Lockheed's Estimate-At-Completion, September 1996 (Burbank Program Office) ('BPO EAC'), Lockheed expects to incur at

least $254.3 million more in indemnity costs, not including internal costs, in fulfilling the continuing obligations under the various orders and directives of the governmental authorities. Since Lockheed's last projection of estimated costs for the Burbank Site, Lockheed has successfully negotiated with the EPA for a less expensive remedial alternative which will save approximately $60.0 million in indemnity costs. Lockheed reserves its right to conform these damage figures consistent with proof at trial. [¶] 77. Lockheed reasonably anticipates that it may be subject to future claims for damages alleging property damage, personal injury, and/or bodily injury involving the alleged environmental contamination relating to the Burbank Site. In fact, Lockheed has already given notice to the carriers herein of additional claims alleged against Lockheed for this Site." Exhibits E and F (liability allocation charts), which Lockheed attached to its fifth amended cross-complaint, indicate that the underlying limits of Lockheed's primary policies totaled less than $90 million.

Moreover, Ludgate admitted knowledge in paragraph 9 of its first amended complaint that Lockheed's claims totaled $340 million in indemnity costs and were likely to reach the Ludgate policies. That paragraph reads: "Lockheed's Demand, as set forth more fully below in this ¶ 9 of this First Amended Complaint, seeks defense expenses of approximately $2.3 million, as well as future defense expenses, and incurred and projected indemnity costs of over $340 million with respect to the Stringfellow Acid Pits, the Operating Industries, Inc. GBF/Pittsburg, Moffett Park Auto Center, Hillview-Porter Regional, Building 255, Murdock Engineering, Plainfield, Redlands, Beaumont 1 and 2, LMSC Plant One, and Burbank sites, as follows: [¶] . . . [¶] 1. *The Burbank site* hereafter, the 'Burbank' site). [Ludgate] [is] informed and believe[s] and thereon allege[s] that Lockheed is involved at three different 'operable units,' as described by Lockheed, which are included within the Burbank site: the Burbank operable unit; the North Hollywood operable unit; and the Glendale North operable unit. Lockheed's Demand to Procter and Companies, under the Primary Policies and the Excess Policies in effect from 1952 (although operations at the Burbank site began in 1928, none of the Primary Policies or the Excess Policies were in effect prior to 1952), seeks defense costs in the amount of $1,139,859.42, as well as future defense costs, and incurred and projected indemnity costs of at least $219 million with respect to the Burbank operable unit, $20 million with respect to the North Hollywood operable unit, and $38 million with respect to the Glendale North operable unit, for a total of at least $277 million in indemnity costs with respect to the Burbank site. [Ludgate] [is] informed and believe[s] and thereon allege[s] that Lockheed has owned and operated the Burbank site from 1928 to the present."

Because Ludgate admitted knowledge that Lockheed's claims totaled $340 million in indemnity costs and were likely to reach the Ludgate excess

policies, for which reason Ludgate initiated this declaratory relief action, and because Ludgate disputed liability under such claims even should the primary policies be exhausted, thereby creating an actual controversy between Lockheed and Ludgate, requiring Lockheed to allege additional facts to establish reasonable probability of exhaustion and actual controversy was superfluous and served no useful purpose. ■ The California Supreme Court has consistently held that "a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. [Citation.] If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend. [Citations.]" (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462].) "The particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff. [Citation.]" (*Jackson v. Pasadena City School Dist.* (1963) 59 Cal.2d 876, 879 [31 Cal.Rptr. 606, 382 P.2d 878].) There is no need to require specificity in the pleadings because "modern discovery procedures necessarily affect the amount of detail that should be required in a pleading." (*Semole v. Sansoucie, supra*, 28 Cal.App.3d at p. 719.)

■ The fair-notice test is clearly met here. Indeed, this declaratory relief action was initiated by Ludgate itself on Ludgate's assertion and representation to the court that an actual controversy exists between itself and Lockheed relating to their rights and duties under the excess insurance policies issued by Ludgate to Lockheed.

■ In concluding that Lockheed's fifth amended cross-complaint failed to state a cause of action, the trial court discussed at length Lockheed's failure to state in its fifth amended cross-complaint that it was "incorporating by reference" certain exhibits that Lockheed had attached to its fifth amended cross-complaint, even though Lockheed had extensively discussed those exhibits in the body of that amended complaint. The court gave prominent importance to the fact that: "In the first 125 paragraphs of its pleading, Lockheed refers to, but nowhere incorporates by reference, a 4-page list of 'London Market Syndicate' numbers . . . ; a 12-page list of names of what it calls 'London Market Companies' . . . ; a 1-page chart showing various carrier names, policy numbers and policy periods, entitled 'Insurance Policies' . . . ; 2 sets of 2-page charts labeled 'allocation models' 1 and 2 . . . and then another one-page chart of carrier names, policy numbers and policy periods, simply entitled 'Exhibit G'. In contrast, however, Lockheed specifically incorporates by reference one 8-page chart,

again showing various carrier names, policy numbers and policy periods, and entitled 'Insurance Policies' . . . . [¶] Significantly, Lockheed's identification of each of these excess carrier cross-defendants is limited to describing their places of incorporation and principal places of business . . . . Lockheed makes no reference to, or incorporation of, the relevant terms and conditions of any cross-defendant's excess policies anywhere within the 101 pages of text of this pleading." The court implicitly concluded that because Lockheed had failed to state that these exhibits were "incorporated by reference" as part of its fifth amended cross-complaint, they were not part of that pleading, and therefore should not be considered in determining whether Lockheed's fifth amended cross-complaint stated a cause of action for declaratory relief.

The exercise is technical. ■ In reviewing a judgment on the pleadings, "we give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context. [Citations.]" (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co., supra,* 44 Cal.App.4th at p. 198.) ■ The mantra "incorporated by reference" is not sacrosanct, and under a rule of liberal interpretation cannot defeat an otherwise adequate pleading. At the very least, if all that was needed was to state the magic words "incorporated by reference," the trial court should have allowed Lockheed to amend further its fifth amended cross-complaint to add those words. Denying Lockheed the opportunity of such a harmless amendment was an abuse of discretion.

■ The fact, however, as shown above, is that Lockheed's fifth amended cross-complaint sufficiently alleged the existence of an actual controversy between Lockheed and Ludgate, particularly when considered in light of Ludgate's own first amended complaint, which asserted and represented to the court the existence of an actual controversy between itself and Lockheed. The "unincorporated" attachments were not necessary to make Lockheed's fifth amended cross-complaint state a cause of action for declaratory relief.

Ludgate's reliance on *Community Redevelopment Agency v. Aetna Casualty & Surety Co.* (1996) 50 Cal.App.4th 329 [57 Cal.Rptr.2d 755] (hereafter, *Community Redevelopment Agency*), and *Iolab Corp. v. Seaboard Sur. Co.* (9th Cir. 1994) 15 F.3d 1500 (hereafter, *Iolab*), is misplaced. Neither case involved a judgment on the pleadings. *Community Redevelopment Agency* involved a declaratory judgment that was reached after full trial on the merits. The court in that case held that an excess insurer has no duty to defend until all the primary insurance has been exhausted. However, this was a ruling based on facts found by the court following a full trial. The court did not find the pleadings deficient.

In *Iolab*, which was a federal case, the court held that under California law, all primary insurance must first be exhausted before liability can attach to an excess or secondary policy. (*Iolab, supra,* 15 F.3d at p. 1504.) However, *Iolab* involved a summary judgment that did not address the sufficiency of the pleadings. Summary judgments are governed by a different standard of review. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

Ludgate contends it would be prejudiced if it were brought back into the underlying action after trial had begun. This contention ignores the fact that it was Ludgate, not Lockheed, that initiated this action. By filing this action, Ludgate is presumed to intend to pursue the litigation to its logical conclusion. Ludgate cannot therefore be heard to claim prejudice if it is brought back to this action, as it had originally intended, and to have its rights and duties under the excess insurance contracts it had issued to Lockheed judicially declared, as it had sought.

We conclude Lockheed's fifth amended cross-complaint states a cause of action for declaratory relief, and the trial court reversibly erred in holding to the contrary.

*Bond Motion*

■■■ Lockheed contends the trial court's denial of its bond motion was a clear abuse of discretion, representing flagrant disregard of the express terms of the Insurance Code and the legislative intent behind it. We disagree.

Section 1620, prior to the 1996 amendments,[2] provided: "(a) The provisions of the preceding sections of this article shall not apply to any action, suit or proceeding against any unauthorized foreign or alien insurer arising out of any contract of insurance effected in accordance with Sections 1760.5 and 1763 where such contract contains a provision designating a resident of this state or any firm of which one member is a resident of this state to be its true and lawful attorney upon whom may be served all lawful process in any such action, suit, or proceeding. [¶] (b) In any such action, suit or proceeding arising out of any such contract of insurance, the court may require the insurer to file a bond, in an amount sufficient to secure the payment of any final judgment which may be rendered unless the insurer makes a showing satisfactory to the court that it maintains in a state of the United States funds or securities in trust or otherwise, sufficient and available to satisfy any such final judgment and that it will pay the judgment without requiring suit to be brought thereon in the state where the securities or funds are located."

---

[2]The 1996 amendment rewrote section 1620, but has no retroactive effect. In any event, the amendment would have produced the same result.

The "preceding sections of this article" referred to in section 1620, subdivision (a) includes section 1616, which states: "Before any nonadmitted foreign or alien insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, the insurer shall either (1) procure a certificate of authority to transact insurance in this state; or (2) give a bond in the action, suit or proceeding in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in the action, suit, or proceeding."

Here, the trial court found that the section 1620 exception to the section 1616 bond requirement applies because "except for 1977, the surplus line brokers who effected the insurance contracts in this case were licensed surplus line brokers" within the meaning of section 1763, and that "the insurance contracts involved in this case contained provisions designating a resident agent for service of process."

However, although the bond requirement of section 1616 does not here apply, section 1620, subdivision (b), nonetheless gives the trial court discretion to require the nonadmitted alien insurer to put up such a bond. The issue here is whether the trial court abused its discretion in denying Lockheed's motion to require Ludgate to put up a bond. Lockheed contends that the word "may" in the phrase "may require the insurer to file a bond" in subdivision (b) is mandatory in context and should be read as "shall" where, as here, the nonadmitted foreign insurer "lacks sufficient funds in the United States to satisfy any final judgment." Lockheed argues that in this case, the discretion of the court is limited to determining "whether United States funds identified are 'sufficient,' whether they are 'available' and whether funds held 'otherwise' than in trust are nonetheless sufficient and available." We disagree.

Clearly, because the thrust of section 1620 is to exempt certain nonadmitted foreign insurers from the bond requirement of section 1616, the import of the clause "unless . . . [t]he insurer makes a showing satisfactory to the court that it maintains in a state of the United States funds or securities in trust or otherwise, sufficient and available to satisfy any such final judgment and that it will pay the judgment without requiring suit to be brought thereon in the state where the securities or funds are located," is that where it applies, the nonadmitted foreign insurer is exempt from the bond requirement.

Here, the trial court, in denying Lockheed's bond motion, stated: "Notwithstanding the applicability of the § 1620(a) exception to the § 1616 bonding requirement, the Court may require nonetheless that a nonadmitted

insurer file a bond unless the insurer makes a showing satisfactory to the Court that it maintains funds or securities in the United States in trust or otherwise, sufficient and available to satisfy any final judgment and that it will pay the judgment without requiring suit to be brought thereon in the state where the securities or funds are located. The Court finds that Procter and Companies has made the required showing and that, therefore, the Court may not require Procter and Companies to file a bond pursuant to § 1620(b). Moreover, the Court finds that even if that showing were not sufficient and satisfactory pursuant to § 1620(b), the Court would exercise its discretion and not require the filing of a bond pursuant to § 1620(b) for the reasons, among others (and in addition to the showing of the extent of securities or funds discussed above), that are set forth in Procter and Companies Opposition Memorandum filed with respect to this motion at pages 12-14 and 16-19."

Pages 12 to 14 of Procter and Companies's opposition memorandum point to Lockheed's continued confidence in the London insurance market, as demonstrated by the fact that "[f]or more than 40 years, Lockheed has placed, and continues to place, major insurance programs in the London insurance market." Pages 16 to 19 of the same opposition memorandum argue that "[t]he bonding capacity of the world is on the order of 'from $1 billion to $1.5 billion under the best possible circumstances,'" and that because "Lockheed's bond motion seeks one-half to one-third of that amount," "[t]hat capacity quickly would be exhausted if every California insured involved in environmental coverage actions sought litigation bonds from their nonadmitted insurers. Consequently, there is no commercial reality to the remedy Lockheed suggests."

Lockheed disagrees with Procter and Companies's claim regarding the bonding capacity of the world, arguing that "the capacity of the marketplace is judged on a per bond basis, not on an aggregate total." Lockheed also takes issue with Ludgate's claim that Lockheed had demonstrated confidence in Ludgate's ability to pay a judgment by pointing out that Ludgate was not among the London market companies with which it had made recent insurance placements.

The lack of agreement does not justify reversal. The record reasonably supports the conclusion reached by the trial court. ▉ Where there is a rational basis for the trial court's conclusion, there is no abuse of discretion. " '[D]iscretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]' " (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183 [40 Cal.Rptr.2d 239]; *State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)

 The conclusion that the trial court did not abuse its discretion is particularly compelling when Lockheed's bond motion is viewed in context. Lockheed filed its bond motion on February 16, 1995. At that time, Ludgate was still part of the plaintiff group known as Procter and Companies. Ludgate did not go on its own as a separate plaintiff until December 1995. The trial court ruled on Lockheed's motion on July 7, 1995, and filed its order denying the bond motion on July 12, 1995, five months before Ludgate separated itself from Procter and Companies as a plaintiff group. Because Ludgate was part of the Procter and Companies plaintiff group both at the time Lockheed filed its bond motion and at the time the trial court issued its ruling on the motion, the finding of the trial court that Procter and Companies had made the required showing under section 1620, subdivision (b), that it had "funds or securities in the United States in trust or otherwise, sufficient and available to satisfy any final judgment and that it will pay the judgment without requiring suit to be brought thereon in the state where the securities or funds are located," extended to, and benefited, Ludgate, as well. It follows that the trial court did not abuse its discretion in lumping Ludgate together with the rest of Procter and Companies in determining whether that plaintiff group, which included Ludgate, should be required to file a bond.

In any event, assuming error, Lockheed invited the error. In its bond motion, Lockheed did not ask the trial court to apportion the $475 million bond it requested among the individual members of Proctor and Companies pursuant to any contribution formula; rather, Lockheed asked the court to order Procter and Companies to post the bond as one unit, without regard to individual allocations. Clearly, in filing its bond motion, Lockheed proceeded on the theory that the obligation to post the bond was a joint liability of the insurers that made up the Procter and Companies group, and not a separable obligation of each individual member. Consequently, if it was error for the trial court to look at the bond issue as a joint liability issue, Lockheed invited the error, and cannot be heard to complain about it on appeal. As stated *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79]: "The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.] . . . At bottom, the doctrine rests on the purpose of the principle, which prevents a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations.]"

## DISPOSITION

The order granting Ludgate's motion for judgment on the pleadings is reversed. The order denying Lockheed's bond motion is affirmed. This

matter is remanded to the trial court for further proceedings consistent with this opinion. Because the main issue in this appeal is the judgment on the pleadings issue, we declare Lockheed the prevailing party in this appeal, even though it failed in the collateral bond motion issue. Lockheed is awarded the costs of this appeal.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.