[No. G033879. Fourth Dist., Div. Three. June 15, 2007.]

TIMOTHY W. SCHULZ, JR., Plaintiff and Appellant, v.
NEOVI DATA CORPORATION et al., Defendants and Respondents.

## COUNSEL

Lakeshore Law Center and Jeffrey Wilens for Plaintiff and Appellant.

Law Offices of Eric D. Morton and Eric D. Morton for Defendant and Respondent Neovi Data Corporation.

Kelly, Herlihy & Klein, Thomas M. Herlihy, Michael G. Glanzberg and Mukesh Advani for Defendant and Respondent Ginix, Inc.

Gibson, Dunn & Crutcher, Gail E. Lees, Elizabeth A. Brem and Christopher Chorba for Defendant and Respondent PaySystems, Inc.

Cooley Godward, Michael G. Rhodes, Lori R.E. Ploeger and James R. Patterson for Defendant and Respondent PayPal, Inc.

## OPINION

**RYLAARSDAM, Acting P. J.**—Plaintiff Timothy W. Schulz, Jr., appeals from a judgment entered after the demurrer to his second amended complaint was sustained without leave to amend. He contends he sufficiently pleaded a cause of action for unfair competition under Business and Professions Code section 17200 et seq., specifically alleging that defendants Neovi Data Corporation, Ginix, Inc., PaySystems, Inc., and PayPal, Inc., aided and abetted the operation of an illegal lottery. We agree as to Ginix and PaySystems and reverse as to those defendants on that basis. We affirm the judgment in favor of PayPal and Neovi because the causes of action against them are not pleaded sufficiently.

We remand to give plaintiff an opportunity to amend the complaint to allege facts required under the unfair competition law as amended by Proposition 64 as to the causes of action against Ginix and PaySystems.

## FACTS AND PROCEDURAL HISTORY

On appeal from a judgment entered after a demurrer is sustained without leave to amend, we assume all facts properly pleaded in the complaint are true. (*Construction Protection Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372].) In his second amended complaint (complaint) plaintiff alleged that defendant EZ Expo (not a party to this appeal) operated an "Internet Matrix." He described it as an Internet site where a consumer is given the opportunity to "receive expensive electronic products for a fraction of the price. The catch is that the participant receives the expensive prize only by paying a fee to enter a 'matrix' and then only if a number of consumers also join the 'matrix' after him."

On EZ's site, to obtain a 50-inch plasma television valued at $5,500, a participant enters the plasma television matrix by purchasing the required three "E-books" for $150. Upon payment, he or she receives a link to download the E-books and has his or her name placed on the list of those eligible to receive the television. "[W]hen 50 persons have each paid $150, the first person to enter will receive the plasma television 'for free' and his name is removed from the list." In that event, the second name on the list moves to the top and 50 more people need to enter for that person to receive the television. EZ "encourages participants to recruit others to enter the matrix."

Plaintiff alleged he entered five matrices, including the plasma television matrix, paying more than $500. When he realized the EZ matrix "was a scam," he asked for a refund, which EZ refused. He further alleges the E-books have minimal, if any, value, and that "[b]y offering the chance to win valuable prizes, EZ . . . has sold the worthless [E]-books for millions of dollars."

Plaintiff alleged that "PaySystems and Ginix are the former and current credit card processing and billing services for EZ" whom many of the matrix participants used to pay for their purchases. He pleaded that EZ requested these defendants process credit card orders and sent its Web site to them for their review. He alleged PaySystems and Ginix realized EZ's site was an unlawful lottery and knew EZ was making false claims and engaging in unfair business practices, but authorized EZ to use their payment services "with the knowledge and specific intent of aiding and abetting and facilitating the illegal lottery . . . ." Plaintiff further alleged that these defendants

perceived that use of credit cards "would lend an aura of respectability" to the site, deceive consumers into believing the activity was legal, and make participation easier, thereby generating more revenue.

Plaintiff alleged PaySystems and Ginix contracted with EZ to display their logos and create links to their respective Web sites so they could process payments. The orders were actually placed on defendants' Web sites, where defendants charged the credit cards, collected the money, and then paid EZ after deducting what EZ owed them for processing the transactions.

As to PayPal, plaintiff alleged it is a payment processor, which "allows consumers to create virtual accounts by depositing money with [it]." When a customer does business with a company that contracts with PayPal, in this case EZ, the customer is transferred to PayPal's Web site where the transaction is completed. After deducting its commission, PayPal then pays EZ. Plaintiff also alleged PayPal contracted with EZ after reviewing its Web site and determining that it operated an illegal lottery. It authorized a link with EZ "with the knowledge and intent of aiding and abetting and facilitating the operation of the EZ Expo website in a manner similar to that described . . . with respect to Ginix and PaySystems."

Plaintiff alleged Neovi's relationship with EZ was similar to that of Ginix and PaySystems, except customers paid with a " 'virtual' check." Plaintiff pleaded Neovi knew EZ's operations were illegal but "knowingly and intentionally aided and abetted the operation" and "directly profited . . . by receiving a percentage of each check transaction or collecting a fee . . . ."

In the first cause of action for unfair competition, plaintiff alleged the conduct of all defendants was an " 'unlawful' business act or practice within the meaning of [Business and Professions Code] section 17200 because the EZ Expo Internet Matrix constitutes a 'lottery' within the meaning of California Penal Code section 319 and/or an 'Endless Chain Scheme' within the meaning of California Penal Code section 327." This cause of action alleged plaintiff acted in three capacities, as an individual, as a private attorney general under Business and Professions Code sections 17203 and 17204, and as the representative in a class action.

Plaintiff brought the second, third, and fourth causes of action for unfair competition solely as a private attorney general under Business and Professions Code sections 17203 and 17204 against Ginix, PaySystems, and PayPal, respectively, for their payment processing services to entities other than EZ.

Ginix, PaySystems, and PayPal each demurred to the causes of action alleged against them; Neovi joined in PaySystems's demurrer. Essentially, all

defendants argued the complaint did not sufficiently allege facts to support a cause of action for aiding and abetting unfair competition. The trial court sustained the demurrers without leave to amend and entered judgment.

After the appeal was filed and briefing was completed, on November 2, 2004, the voters passed Proposition 64, which amended several sections of the unfair competition law. We asked the parties for letter briefs addressing whether the amendments applied to this case.

In April 2005 we issued an opinion in which we held that Proposition 64 barred plaintiff from proceeding against all defendants except Ginix and that plaintiff sufficiently pleaded a cause of action against it for aiding and abetting unfair competition. We remanded to allow plaintiff the opportunity to amend that cause of action to allege sufficient facts to comply with the requirements of the amended unfair competition law. The California Supreme Court granted review and subsequently transferred the case to this court with directions to vacate our prior opinion and reconsider the matter in light of *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 [46 Cal.Rptr.3d 66, 138 P.3d 214].

## DISCUSSION

1. *Proposition 64*

█ The amendments to the unfair competition law in Proposition 64 became effective on November 3, 2004. (Cal. Const., art. II, § 10, subd. (a).) Prior to the amendment, Business and Professions Code former section 17204 authorized "any person acting for the interests of itself, its members or the general public" to bring an action to enjoin and to seek restitution for unfair competition. The amended section now allows a party other than a public prosecutor to file or maintain an action only if the party "has suffered injury in fact and has lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204.) In addition, a private plaintiff must now "compl[y] with Section 382 of the Code of Civil Procedure [dealing with class actions] . . . ." (Bus. & Prof. Code, § 17203.) As the Supreme Court explained in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207], the amendments apply to causes of action in cases pending at the time of enactment.

█ The complaint in its current form does not meet the new pleading requirements. However, plaintiff represented in his letter brief and at oral argument that he used the payment processing services of Ginix and is able to amend the first cause of action to allege the requisite facts of actual injury as to that defendant. It is appropriate to allow plaintiff this opportunity to

amend. (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369] [the plaintiff must be allowed to amend if any reasonable possibility he can state cause of action], disapproved on another ground in *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 19–21 [111 L.Ed.2d 1, 110 S.Ct. 2695]; Code Civ. Proc., § 472c, subd. (a) [even where no request in trial court, appellate court may consider whether discretion abused in denying leave to amend].)

Plaintiff acknowledged in his supplemental brief and at oral argument that he did not use the services of any defendant except Ginix. Thus, he has not "suffered injury in fact [or] lost money or property as a result of [alleged] unfair competition" by the other three defendants. (Bus. & Prof. Code, § 17204.) As such, he has no standing to pursue this action against Neovi, PaySystems, or PayPal under Business and Professions Code section 17200 as amended by Proposition 64.

Counsel for plaintiff argues he has alternative parties he could substitute in as plaintiffs that were directly harmed by those defendants and seeks the opportunity to amend the complaint to make such allegations and to allege a class action in those causes of action.

In *Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th 235, the plaintiffs sued the defendant on behalf of the public for unfair competition, claiming it had overcharged customers for bank fees. But the plaintiffs did not allege they had done business with the defendant or suffered any damage in fact. During the pendency of the action, Proposition 64 was enacted. The Supreme Court held the plaintiffs had the right to seek leave to amend the complaint to substitute new plaintiffs who would have standing under the amended provisions of the unfair competition law. (39 Cal.4th at pp. 242–243.) It noted that "courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest. [Citations.]" (*Id.* at p. 243.)

The court declined to decide the merits of the motion to amend, however, because it had not yet been filed and the court had no information about "the identity of any person [the] plaintiffs might attempt to substitute and the nature of the claims any substituted plaintiff might assert." (*Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th at p. 243.) In remanding the case, *Branick* instructed the trial court to "decide the motion by applying the established rules governing leave to amend (Code Civ. Proc., § 473) and the relation back of amended complaints [citation]." (*Id.* at p. 239.)

Our case is similar. Plaintiff contends he could amend the complaint "to add additional plaintiffs who have standing . . . against some or all of these

defendants. Plaintiff could also amend to allege a class action against these other defendants on that basis." As in *Branick*, plaintiff here has not yet filed a motion to amend and we have no information as to who new plaintiffs might be or the nature of their claims.

■ Based on *Branick*, plaintiff has the right to file a motion to amend the causes of action against PaySystems to cure lack of standing resulting from adoption of Proposition 64. Although we, too, decline to give an advisory opinion, for the benefit of the court on remand we note *Branick*'s reminder that, in considering a motion to amend under these circumstances, the proposed new plaintiffs "may not 'state facts which give rise to a wholly distinct and different legal obligation against the defendant.' [Citation.]" (*Branick v. Downey Savings & Loan Assn., supra*, 39 Cal.4th at p. 243.)

Because, as set out below, we are affirming the judgment in favor of PayPal and Neovi based on plaintiff's failure to allege sufficient substantive facts to plead a cause of action for aiding and abetting an illegal lottery, plaintiff has no right to amend as to these defendants.

2. *Sufficiency of Substantive Allegations*

The trial court ruled plaintiff had not adequately pleaded causes of action against defendants for aiding and abetting the operation of an illegal lottery or pyramid scheme. As to Ginix and PaySystems, we disagree.

a. *Introduction*

■ " 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act . . . .' [Citations.]" (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325 [58 Cal.Rptr.2d 308].) This is consistent with the Restatement Second of Torts, which recognizes a cause of action for aiding and abetting in a civil action when it provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he [¶] . . . [¶] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." (Rest.2d Torts, § 876, subd. (b).) "Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. . . . It likewise applies to a person who knowingly gives substantial aid to another who, as he knows, intends to do a tortious act." (Rest.2d Torts, § 876, com. d, p. 317.)

b. *Ginix and PaySystems*

Here, as to Ginix and PaySystems, the complaint contains facts satisfying those elements. As to their knowledge, plaintiff alleges they reviewed EZ's Web site and "recognized that the site was an illegal lottery, but also realized that it generated substantial revenue and could be very profitable for [them]." He also alleges Ginix and PaySystems "knew they were facilitating orders for an unlawful pyramid scheme and/or lottery, and that the EZ . . . website made false, misleading and deceptive claims and engaged in unfair business practices"; and "[knew] the money being paid by the consumer [was] for purposes of participation in the lottery."

■ In addition to pleading the requisite knowledge, these allegations also dispense with Ginix's argument that plaintiff's theory of the case requires defendants to investigate EZ's Web site or monitor its conduct to determine whether it was illegal. The complaint alleges Ginix and PaySystems reviewed the site and knew it was unlawful. Likewise, this theory does not violate public policy. We do not quarrel with the claim that payment processors provide useful services to consumers. But this does not give them license to aid and abet illegal activity.

The complaint also satisfies the element of substantial assistance or encouragement. It alleges Ginix and PaySystems authorized EZ to configure its site to display their respective logos so that consumers could link directly to their sites to process credit card payments. It further pleads Ginix and PaySystems did this "with the knowledge and specific intent of aiding and abetting and facilitating [EZ's] illegal lottery operations . . . . PaySystems and Ginix hoped and believed that by allowing EZ . . . to take credit card orders, more persons would be able to participate in the illegal lottery, resulting in more revenue for [them]. PaySystems and Ginix also realized that . . . providing their services to EZ . . . [,] would lend an aura of respectability and further encourage participation."

The complaint goes on to state that, after PaySystems terminated its relationship with EZ, a specified person from Ginix "personally assured [EZ] that Ginix did not have any problem with the operation of the lottery site and would not freeze funds paid by consumers [as PaySystems had done] . . . . Ginix . . . essentially promised it would have a 'stronger stomach.' "

These allegations defeat the claim that plaintiff made no required showing of these defendants' knowing and active participation in the alleged acts of unfair competition. We also reject the argument that substantial assistance is not sufficiently pleaded because the complaint alleges they were doing no more than providing their usual, legitimate service of processing credit card

payments. The language quoted above alleges these defendants went far beyond merely processing credit cards.

And, contrary to their arguments, the allegations were more than merely conclusory. Plaintiff pleaded ultimate facts as repeated at length above; detailed allegations are not required. "The California Supreme Court has consistently held that 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. [Citation.]' " (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608 [98 Cal.Rptr.2d 277].) Nor has Ginix persuaded us this is a sham pleading.

Some cases seem to hold that in addition to the elements of knowledge and substantial assistance, a complaint must allege the aider and abettor had the specific intent to facilitate the wrongful conduct. For example, in *Gerard v. Ross* (1988) 204 Cal.App.3d 968 [251 Cal.Rptr. 604], the court states, "In the civil arena, an aider and abettor is called a cotortfeasor. . . . A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort. [Citation.]" (*Id.* at p. 983.) *Howard v. Superior Court* (1992) 2 Cal.App.4th 745 [3 Cal.Rptr.2d 575] notes, "[A]iding and abetting . . . necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong. [Citation.]" (*Id.* at p. 749.)

We need not decide whether this is a required element. Plaintiff made such allegations by pleading that Ginix and PaySystems acted with the "specific intent of aiding and abetting and facilitating [EZ's] illegal lottery operations . . . ."

Defendants rely heavily on *Emery v. Visa Internat. Service Assn.* (2002) 95 Cal.App.4th 952 [116 Cal.Rptr.2d 25] (*Emery*). While superficially it might seem applicable, a more thorough analysis reveals that neither its facts nor its legal principles support their position. In *Emery*, the plaintiff, as a private attorney general, sued for unfair competition and false advertising under Business and Professions Code sections 17200, 17500, and 17535. California residents were solicited to participate in illegal lotteries that allowed payment with Visa cards. The defendant was a clearinghouse comprised of more than 20,000 member financial institutions worldwide. Its member institutions generally fell into one of two types. One contracted with merchants to accept

Visa cards for payments; the other issued credit cards to consumers. The defendant itself did not issue cards and was "not involved either in transferring funds to merchants or in billing cardholders. Nor [did it] receive any fee from either the cardholder or the merchant involved in a particular transaction." (*Emery, supra*, 95 Cal.App.4th at p. 956.)

The plaintiff alleged the defendant's "advertising, licensing of its logo, and utilization of its payment system create[d] either an actual or ostensible agency relationship with its merchants." (*Emery, supra*, 95 Cal.App.4th at p. 954.) He also claimed the defendant aided and abetted the lottery "by failing to prevent the exploitation of its logo and failing to sufficiently repudiate the acts of merchants who accept[ed] VISA bank cards. [Citations.]" (*Ibid.*) The trial court granted the defendant's summary judgment motion, and the Court of Appeal affirmed.

Here, by contrast, plaintiff alleged that Ginix and PaySystems, with prior knowledge of its operations, contracted directly with EZ and received payment based on their activity. In addition, plaintiff is not pleading defendants aided and abetted by failing either to prevent use of their logos in the solicitations or to repudiate EZ's actions. Rather, he alleges they had a direct stake in the success of the Web site and contracted for use of their services to encourage participation and make more money.

Moreover, the basis for exonerating the defendant in *Emery* from aiding and abetting liability is not applicable here. There, the focus of the aiding and abetting allegation was that the defendant failed to stop the lottery solicitations. The court ruled that in that context, the availability of the credit card for payment was not itself sufficient. (*Emery, supra*, 95 Cal.App.4th at p. 963.) It found there was no evidence "that [the defendant] knew of the unlawful solicitations, facilitated their distribution, or in any manner 'rendered aid with an intent or purpose of either committing, or of encouraging or facilitating,' violation of the antilottery penal statutes of this state. [Citation.]" (*Ibid.*) Here, the facts in the complaint are to the contrary.

The plaintiff in *Emery* also sought to impose liability based on the defendant's use of the Visa logo in the solicitations, arguing it "implied to consumers that the merchants' statements were true." (*Emery, supra*, 95 Cal.App.4th at p. 964.) Again, the court ruled it would not impose liability merely based on the defendant's act or omission, i.e., failing to police use of its mark. (*Ibid.*) It noted there was no evidence of "any wrongful motives" on the defendant's part. (*Id.* at p. 965.) "The worst that can be said is that [the defendant] did not take more aggressive corrective steps to curtail the use of its mark on the solicitations." (*Ibid.*) Here, contrary to Ginix's claim, the allegation is not merely that it licensed its logo to EZ. Rather, plaintiff pleads

that defendants, with full knowledge of the alleged illegal Web site, actively participated in processing payments, hoping use of the direct link from EZ's site to their sites would generate more revenue.

As an alternative argument, Ginix and PaySystems assert the operative complaint should be disregarded because it contains allegations inconsistent with the prior complaint. Ginix maintains that the prior pleading alleged it was processing EZ's credit card transactions but that the complaint at issue contrarily alleged Ginix aided and abetted the illegal Web site. We see nothing inconsistent about these statements. The latter allegation is more detailed but it does not contradict the previous pleading.

We also reject PaySystems's argument to the same effect. It points to language in the prior pleading that it knew or should have known it was "facilitating orders" for the illegal lottery, and then "[a]pparently . . . decided to terminate its business relationship with EZ . . . for exactly that reason." The purported contradictory language in the complaint at issue states that PaySystems ceased doing business with EZ due to adverse publicity, "always knew the site was illegal," but had "hoped to get away with assisting the site without public controversy." Again, this is not a contradiction but merely an augmentation of the allegations.

c. *PayPal and Neovi*

As to PayPal and Neovi, however, the complaint is deficient. It pleads only that PayPal knew the site was an illegal lottery but agreed EZ could use its payment system with the knowing intent to aid and abet EZ's operation because it could be profitable for PayPal. As to Neovi the complaint alleges only that it "knew of [EZ's] unlawful operations" "but knowingly and intentionally aided and abetted the operation by setting up a system" for consumers to use its electronic check system, and, as a result, received a fee. This does not sufficiently allege PayPal's or Neovi's knowledge of the alleged illegal lottery or facts showing "substantial assistance or encouragement." These mere conclusions do not save the causes of action. (*State Bd. of Chiropractic Examiners v. Superior Court* (2007) 148 Cal.App.4th 142, 151 [55 Cal.Rptr.3d 374].)

Given that this is plaintiff's second amended complaint and the much more detailed allegations of wrongful conduct by the other two defendants, and the fact that plaintiff did not suggest to us he could cure the defects, we see no reasonable possibility he could amend to satisfy the pleading requirements. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399] [the plaintiff must show how complaint could be amended to reverse sustaining of demurrer without leave to amend].)

## DISPOSITION

■ The judgment in favor of respondents PayPal and Neovi Data Corporation is affirmed. As to respondents Ginix and PaySystems, the judgment is reversed and the matter remanded to give appellant the opportunity to file a motion to amend the complaint so as to plead facts satisfying the standing and class action requirements for an unfair competition claim under Business and Professions Code section 17200 et seq. as amended by Proposition 64. The motion shall be filed within 30 days of the filing of the remittitur. If the complaint is not amended to meet these requirements, the court shall enter a judgment dismissing the complaint. PayPal and Neovi are entitled to costs on appeal. Appellant, Ginix, and PaySystems shall bear their own costs on appeal.

Bedsworth, J., and Fybel, J., concurred.