[No. B197960. Second Dist., Div. One. Mar. 13, 2008.]

LOWELL R. WEDEMEYER, Plaintiff and Appellant, v.
SAFECO INSURANCE COMPANY OF AMERICA, Defendant and
Respondent.

COUNSEL

Lowell R. Wedemeyer, in pro. per., for Plaintiff and Appellant.

Law Office of Donald J. Deshaw and R. Lawrence Bragg for Defendant and Respondent.

OPINION

JACKSON, J.*—

## INTRODUCTION

Plaintiff Lowell R. Wedemeyer appeals from a judgment on the pleadings in favor of defendant Safeco Insurance Company of America. We reverse.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTS[1]

From April 3 to October 3, 2003, plaintiff's 1993 Toyota Camry was insured under personal auto policy No. A2145931 issued by defendant. The policy included uninsured and underinsured motorist coverage in the amount of $500,000 per person and $500,000 per accident.

On May 28, 2003, plaintiff's Camry was hit from behind by a vehicle driven by Bradley Dean Groscost (Groscost). Plaintiff was seriously injured in the accident.

Groscost and his vehicle were insured by Coast National Insurance Company (Coast) in the amount of $15,000. Plaintiff sued Groscost. (*Wedemeyer v. Groscost* (Super. Ct. L.A. County, BC309170).) Coast tendered to plaintiff the $15,000 conditioned on a general release of Groscost. Plaintiff notified defendant of the lawsuit and of Coast's tender of Groscost's $15,000 policy limits.

In the course of discovery, plaintiff learned that Groscost was employed by Skyline Management Group (Skyline). Skyline was insured by Hartford Insurance Company (Hartford), Hartford Spectrum business insurance policy No. 57 SBA AT1668 DX. This policy included hired auto and nonowned auto liability coverage in the amount of $1 million. Hartford refused to admit coverage under this policy for the accident involving Groscost and plaintiff. Plaintiff notified defendant of the Hartford policy.

Plaintiff demanded that defendant pay him $485,000: the $500,000 underinsured motorist policy limits less the $15,000 policy limits of Groscost's Coast policy. Defendant refused, insisting that plaintiff exhaust the $1 million policy limits of Skyline's Hartford policy.

Plaintiff pursued his litigation against Groscost. On June 16, 2006, plaintiff entered into a settlement agreement with Groscost, Coast, Skyline and Hartford. Plaintiff dismissed the action in exchange for the $15,000 Coast policy limits and $500,000 under the Hartford policy.

## DISCUSSION

Plaintiff sued defendant for breach of insurance contract, unjust enrichment, tortious breach of insurer's fiduciary duty and declaratory relief.

---

[1] In reviewing a judgment on the pleadings, the facts are those set forth in the pleadings and those of which judicial notice may be taken. (*Saltarelli & Steponovich v. Douglas* (1995) 40 Cal.App.4th 1, 5 [46 Cal.Rptr.2d 683].) While we accept the facts alleged as true, we do not accept as true legal conclusions set forth in the pleadings. (Cf. *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204].)

Defendant denied the allegations and asserted a number of affirmative defenses. Thereafter, defendant moved for judgment on the pleadings.

In granting defendant's motion for judgment on the pleadings, the trial court found "that, pursuant to California Insurance Code section 11580.2(p)(3), plaintiff was required to exhaust all applicable policies covering non-defendant driver who caused the accident by payments of judgment or settlement before seeking underinsured motorist coverage from defendant. As such, [the court found] plaintiff's first amended complaint failed to state the causes of action for breach of contract, bad faith, and unjust enrichment, and there is no dispute over the terms of the policy of insurance issued from defendant to plaintiff for which a judicial declaration is necessary."

A judgment on the pleadings should be granted only where, under the facts alleged and those of which judicial notice may be granted, plaintiff has failed to state a claim for relief. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602 [98 Cal.Rptr.2d 277]; *Saltarelli & Steponovich v. Douglas, supra,* 40 Cal.App.4th at p. 5.) If judgment on the pleadings is granted, plaintiff should be granted leave to amend if he can show that he is able to state a claim for relief. (*Ludgate Ins. Co., supra,* at p. 602.) We review the judgment on the pleadings de novo and the denial of leave to amend for abuse of discretion. (*Ibid.*)

Insurance Code section 11580.2 (section 11580.2) governs uninsured and underinsured motorist coverage. Subdivision (p) of that section in pertinent part provides: "This subdivision applies only when bodily injury . . . is caused by an underinsured motor vehicle. . . . [¶] (1) As used in this subdivision, 'an insured motor vehicle' is one that is insured under a motor vehicle liability policy, or automobile liability insurance policy, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law.

"(2) 'Underinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person.

"(3) This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage.

"(4) When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury."

Consistent with section 11580.2, part C of plaintiff's policy from defendant provides uninsured motorists coverage. It provides in pertinent part: "We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of: [¶] 1. **Bodily injury** sustained by an **insured** and caused by an accident." The definition of "uninsured motor vehicle" includes any vehicle "[w]hich, with respect to damages for **bodily injury** only, is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage."

■ Underinsured motorist coverage under section 11580.2, subdivision (p)(3), requires exhaustion of the tortfeasor's policy limits and submission of proof of payment to the insurer. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1056 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) " 'The effect of section 11580.2(p)(3) is to require . . . the insured to prosecute actions against the underinsured, to obtain a settlement and/or judgment and to submit proof of payment to the insurer.' " (*Ibid.*) While this may impose a burden on the insured, it is what the statute requires. (*Farmers Ins. Exchange v. Hurley* (1999) 76 Cal.App.4th 797, 806–807 [90 Cal.Rptr.2d 697].) Once the insured has complied with the statute, the insurer is liable for underinsured motorist coverage only to the extent the insured's coverage exceeds the amount paid to the insured by or on behalf of the underinsured motorist. (*Mercury Ins. Co. v. Vanwanseele-Walker* (1996) 41 Cal.App.4th 1093, 1101 [49 Cal.Rptr.2d 28].)

The trial court determined that plaintiff was required to sue Groscost and exhaust the policy limits of the Coast and Hartford policies before seeking coverage under the underinsured motorist provisions of his policy with defendant. According to the trial court, since he recovered an amount in excess of his underinsured motorist coverage, defendant was not liable for underinsured motorist coverage.

The gravamen of plaintiff's challenge to this conclusion is his claim that the exhaustion rule applies only to automobile liability policies, not other insurance policies. Thus, he was required to exhaust only Groscost's $15,000

Coast policy, and after doing so, defendant was required to pay the additional $485,000 under his underinsured motorist coverage.

■ Subdivision (p)(1) of section 11580.2 defines " 'an insured motor vehicle' " as "one that is insured under a *motor vehicle liability policy,* or *automobile liability insurance policy, self-insured,* or for which a *cash deposit or bond has been posted* to satisfy a financial responsibility law." (Italics added.) These are described in Vehicle Code sections 16020 (evidence of financial responsibility), 16052 (self-insurance), 16054 (evidence of liability policy or bond), 16056 (requirements of liability policy or bond) and 16450 (defining a "motor vehicle liability policy"). Additionally, Insurance Code section 11580.1, subdivision (e), provides that other forms of insurance which include automobile liability coverage are not motor vehicle or automobile liability policies.[2] Skyline's Hartford policy was neither a motor vehicle liability policy nor an automobile liability insurance policy as these are defined in the Insurance Code.

■ Subdivision (p)(3) of section 11580.2 provides that underinsured motorist coverage "does not apply to any bodily injury until the limits of *bodily injury liability policies* applicable to all *insured motor vehicles* causing the injury have been exhausted by payment of judgments or settlements." (Italics added.) In plaintiff's view, "bodily injury liability policies" in subdivision (p)(3) must be interpreted to refer to the bodily injury provisions of a motor vehicle liability policy, automobile liability insurance policy, self-insurance or cash deposit or bond, the presence of which renders a vehicle " 'an insured motor vehicle' " under section 11580.2, subdivision (p)(1).

■ In the construction of statutes, our primary goal is to ascertain and give effect to the intent of the Legislature. (Code Civ. Proc., § 1859; *Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1135 [57 Cal.Rptr.3d 306, 156 P.3d 328].) Our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858; see *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

---

[2] Insurance Code section 11580.1, subdivision (e), provides: "Nothing in this section or in Section 16054 or 16450 of the Vehicle Code shall be construed to constitute a homeowner's policy, personal and residence liability policy, personal and farm liability policy, general liability policy, comprehensive personal liability policy, manufacturers' and contractors' policy, premises liability policy, special multiperil policy, or any policy or endorsement where automobile liability coverage is offered as incidental to some other basic coverage as an 'automobile liability policy' within the meaning of Section 16054 of the Vehicle Code, or as a 'motor vehicle liability policy' within the meaning of 16450 of the Vehicle Code . . . ."

■ We look first to the language of the statute; if clear and unambiguous, we will give effect to its plain meaning. (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227 [64 Cal.Rptr.3d 407, 165 P.3d 133].) Where we must construe the statute, we turn first to the words themselves, giving them their usual, ordinary meanings. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 709 [61 Cal.Rptr.3d 689, 161 P.3d 198].) If possible, each word and phrase should be given significance. (*People v. Mays* (2007) 148 Cal.App.4th 13, 29 [55 Cal.Rptr.3d 356].) The words used "must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; accord, *Troppman v. Valverde, supra,* 40 Cal.4th at p. 1135, fn. 10.) We must give the statute a reasonable interpretation, avoiding, if possible, a literal interpretation which will lead to an absurd result. (*Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142 Cal.App.4th 636, 649 [47 Cal.Rptr.3d 832].)

■ The term "bodily injury liability policies" is not defined in section 11580.2. Where it is used in other parts of the section, however, it is clear by the context that it is used to refer to the bodily injury provisions of a motor vehicle or automobile liability policy. Subdivision (a)(1) of section 11580.2 provides that "[n]o policy of *bodily injury liability insurance* covering liability arising out of the ownership, maintenance, or use of any motor vehicle" shall be issued unless it contains uninsured motorist coverage. (Italics added.) Section 11580.2, subdivision (b) refers to "motor vehicle *bodily injury liability insurance.*" (Italics added.) Subdivision (p)(7) of section 11580.2 provides that "[u]nderinsured motorist coverage shall be included in all policies of *bodily injury liability insurance* providing uninsured motorist coverage . . . ." (Italics added.)

■ To interpret the term "bodily injury liability insurance" consistently within section 11580.2 (*Troppman v. Valverde, supra,* 40 Cal.4th at p. 1135, fn. 10; *California Mfrs. Assn. v. Public Utilities Com., supra,* 24 Cal.3d at p. 844), we must interpret it in section 11580.2, subdivision (p)(3) to mean motor vehicle or automobile bodily injury liability policies "applicable to all insured motor vehicles causing the injury."

■ Additionally, subdivision (p)(5) of section 11580.2 provides that an "insurer paying a claim under this subdivision shall, to the extent of the payment, be entitled to reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator." To the extent the applicable policies are exhausted prior to the insurer's payment of an underinsured motorist claim, the insurer would be entitled to credit only for the amount received by the

insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator. Only if exhaustion did not come into play would reimbursement be necessary. That would be in a situation like the one in the instant case:. Plaintiff exhausts the bodily injury liability coverage of Groscost's Coast policy. Defendant pays plaintiff the difference between plaintiff's underinsured motorist coverage and the Coast policy limits. Plaintiff recovers an additional amount from Skyline's Hartford policy. Plaintiff must reimburse defendant for the payments received from the Hartford policy to the extent of defendant's payment to plaintiff. In other words, by providing for both credit and reimbursement, the Legislature assumed that not all applicable policies necessarily would be exhausted prior to payment of underinsured motorist coverage under section 11580.2, subdivision (p)(3).

▆ Viewing section 11580.2 as a whole, we must conclude the Legislature intended subdivision (p)(3) to require exhaustion of motor vehicle or automobile bodily injury liability policies only, for underinsured motorist coverage to apply. This interpretation harmonizes the provisions of the statute and is the most reasonable. (*Troppman v. Valverde, supra*, 40 Cal.4th at p. 1135, fn. 10; *Armenta ex rel. City of Burbank v. Mueller Co., supra*, 142 Cal.App.4th at p. 649.)

Since plaintiff was required to exhaust only Groscost's Coast policy before defendant was required to pay the balance of his underinsured motorist coverage, plaintiff stated a claim for relief for breach of contract. (See *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489 [49 Cal.Rptr.3d 227].)[3] The trial court therefore erred in granting judgment on the pleadings. (*Ludgate Ins. Co. v. Lockheed Martin Corp., supra*, 82 Cal.App.4th at p. 602; *Saltarelli & Steponovich v. Douglas, supra*, 40 Cal.App.4th at p. 5.) Inasmuch as the judgment must be reversed, we need not address plaintiff's additional claims that his complaint states causes of action for unjust enrichment, breach of the implied covenant of good faith and fair dealing, and declaratory relief.[4]

---

[3] Although plaintiff obtained more than the full amount of his underinsured motorist coverage from Groscost's and Skyline's policies, he seeks as contract damages the amounts he expended in litigation in his attempt to exhaust Skyline's Hartford policy after defendant wrongfully refused to pay the $485,000 due under his underinsured motorist coverage after plaintiff exhausted Groscost's Coast policy.

[4] We deny plaintiff's request for judicial notice of the records of the United States District Court concerning diversity jurisdiction, in that these records are irrelevant to our disposition of the issues on appeal. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13 [15 Cal.Rptr.3d 244].)

## DISPOSITION

The judgment is reversed. Plaintiff is to recover his costs on appeal.

Mallano, Acting P. J., and Rothschild, J., concurred.

A petition for a rehearing was denied April 9, 2008, and respondent's petition for review by the Supreme Court was denied June 25, 2008, S162942. George, C. J., and Corrigan, J., did not participate therein.