Filed 9/11/25  Courtois v. New Rez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KRISTI COURTOIS, Individually and as Executor, etc., | B338475 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV22971) |
| v. | |
| NEW REZ, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed in part, reversed and remanded in part.

Law Offices of Ronald H. Freshman and Ronald H. Freshman for Plaintiff and Appellant.

Klinedinst, Ian A. Rambarran and Neeru Jindal for Defendants and Respondents.

Kristi Courtois, individually and as alleged executor and beneficiary of the estate of Austeene Cooper, appeals the trial court's order sustaining the demurrer to her first amended complaint in part without leave to amend and the judgment entered after the court granted a motion for judgment on the pleadings without leave to amend with respect to her third amended complaint. In 2006, Cooper executed a deed of trust as security for a loan from Countrywide Home Loans, Inc. (Countrywide). The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary and nominee of the lender and its assigns. Cooper agreed that MERS had the right to exercise any and all interests she granted in the deed of trust. MERS assigned its interest to The Bank of New York Mellon, formerly known as The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-6, Mortgage Pass-Through Certificates, Series 2007-6, which foreclosed on the deed of trust. Courtois filed this action in 2020 against MERS, CWALT, Inc., and respondents The Bank of New York Mellon and NewRez, LLC doing business as Shellpoint Mortgage Servicing (Shellpoint).[1]

The trial court sustained a demurrer to the causes of action in the first amended complaint premised on the allegation that MERS's assignment of the deed of trust to The Bank of New York Mellon was void. The court concluded that res judicata barred these claims, as Cooper had previously filed a lawsuit in which she asserted that the assignment was void, judgment was entered in the defendants' favor, and the ruling was affirmed on

---

[1]     MERS and CWALT, Inc. are not parties to this appeal.

appeal.  The trial court granted the motion for judgment on the pleadings as to the third amended complaint on the ground that Courtois lacked standing to bring the action because she was not the personal representative of Cooper's estate.  After the trial court entered judgment, the probate court appointed LeeAnn Hitchman as administrator of Cooper's estate.

The trial court correctly concluded that Courtois lacked standing and the order granting the motion for judgment on the pleadings was appropriate at the time.  Nevertheless, a plaintiff may raise new facts supporting amendment on appeal.  We reverse the judgment and remand to allow the trial court to consider whether the circumstances of the case warrant granting leave to amend the complaint to substitute Hitchman as plaintiff.  We affirm the trial court's order sustaining the demurrer as to the causes of action based on the assignment of the deed of trust to The Bank of New York Mellon.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, Cooper entered into a loan transaction with Countrywide as the lender.  The loan amount was $700,000.  A deed of trust on a real property in Beverly Hills secured the loan.  The deed of trust provided that "MERS is a separate corporation that is acting solely as a nominee for [Countrywide] and [Countrywide's] successors and assigns.  MERS is the beneficiary under this Security Instrument."  It further provided: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the

Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." The deed of trust also provided that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

At some unknown time, Countrywide sold the loan to CWALT, Inc. In June 2011, MERS recorded an assignment of the deed of trust to The Bank of New York Mellon. The recorded document stated that MERS assigned to The Bank of New York Mellon all beneficial interest under the deed of trust "together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust."

In March 2014, Cooper filed a complaint in which she alleged that her deed of trust was owned by a securitized trust of which The Bank of New York Mellon was trustee. The closing date for the securitized trust was February 2007, but MERS did not assign Cooper's deed of trust to The Bank of New York Mellon until June 2007. Cooper thus contended the assignment was void. Cooper's complaint asserted causes of action for fraud, unfair competition, rescission, quiet title, declaratory relief, and slander of title. The defendants demurred to the complaint. The trial court sustained the demurrer on the grounds that Cooper failed to allege her standing to challenge the assignment of her debt and failed to allege that the securitization of her debt had caused her any damages.

Cooper appealed and, in October 2016, a panel of this Division affirmed the order of dismissal. The court concluded, among other things, that the alleged assignment of Cooper's deed

4

of trust to a securitized trust occurring after the trust's closing date was merely voidable, not void, and only the parties to the assignment had the power to ratify or avoid the transaction.

In June 2017, a notice of default was recorded on the Beverly Hills property. Cooper died on June 16, 2019.[2] In January 2020, the property was sold at a public auction.

In June 2020, Courtois filed this action as an alleged beneficiary and heir of Cooper's estate. The complaint asserted several causes of action, including wrongful foreclosure, fraud, cancellation of instruments, slander of title, and quiet title.[3] The complaint alleged that Cooper entered into a loan transaction in which Countrywide identified itself as the lender and MERS as the nominee of the lender, acting as beneficiary solely as nominee. The complaint alleged that after CWALT, Inc. purchased the debt, MERS ceased to have a role in the deed of trust. Despite no longer being the beneficiary or agent of the lender, MERS executed and recorded an assignment, purporting to transfer its interest to The Bank of New York Mellon. The complaint further alleged that, at the time of the transfer,

---

[2] Courtois's verified complaints each allege that Cooper died on September 19, 2020, *after* Courtois filed this action as heir and beneficiary of Cooper's estate. We rely on the date provided in Courtois's petitions for probate.

[3] The remaining causes of action pertained to allegations that Shellpoint permitted third parties to access Cooper's loan account and engaged in short sale applications with those third parties, even though Courtois informed Shellpoint representatives on several occasions that those individuals lacked authorization to access the account. Courtois likewise alleged that she was prevented from seeking alternatives to foreclosure because of the activity of these third parties on the loan account.

5

neither Countrywide nor MERS held any interest in the debt or deed of trust, and therefore neither had a legal right to transfer an interest to The Bank of New York Mellon.

In October 2020, after respondents demurred to the original complaint, Courtois filed a first amended complaint. The first amended complaint added allegations that MERS's terms and conditions with its members provide that it has no interest in the debt, may not transfer a note, and a deed of trust is to be deactivated from the MERS system if the debt or note is sold to a non-member of MERS. Respondents again demurred. The trial court sustained the demurrer without leave to amend as to the wrongful foreclosure, fraud, cancellation of instruments, slander of title, and quiet title causes of action.

With respect to these causes of action, the trial court concluded that the allegations that MERS ceased to have an interest when Countrywide transferred its interest to CWALT, Inc. were "not sufficient to prosecute claims based on void foreclosure." It observed that "courts have specifically held such allegations insufficient when the deed of trust itself states that the beneficiary named acts as the nominee of the lender and the lender's 'successors and assigns,' just as the deed of trust here does." It further concluded that res judicata barred Courtois's claims pertaining to the transfer. In Cooper's prior lawsuit, the court had dismissed the action not only because Cooper lacked standing because no foreclosure had taken place, but also because it "rejected Cooper's argument that she had standing to bring a preliminary action on a void assignment, specifically because she had failed to allege grounds to argue that the assignment itself was void." Because this was a determination on the merits, the trial court concluded that Courtois was precluded from

6

prosecuting the same claims in this action. The court sustained respondents' demurrer with leave to amend or overruled the demurrer with respect to Courtois's remaining seven causes of action, which were not based solely on the alleged wrongful assignment of the deed of trust.

In February 2021, Courtois filed a second amended complaint. Respondents again demurred. The trial court sustained the demurrer as to all claims brought against MERS.

In February 2022, Courtois filed a petition in the probate court for the probate of a document dated July 2018, which she asserted was Cooper's will. The will named Courtois as executor and sole beneficiary. In October 2022, the probate court denied the petition without prejudice. Shortly thereafter, Courtois filed another petition for probate of the 2018 will and for authorization to administer Cooper's estate.

In November 2022, respondents filed a motion for judgment on the pleadings in the instant action. Respondents argued that, although Courtois had represented that she was the executor of Cooper's estate, no probate court had ever appointed her as such and she lacked letters of administration. She therefore lacked standing to file and maintain the lawsuit.

In December 2022, the trial court granted the motion for judgment on the pleadings as to all causes of action, with leave to amend to allege Courtois's appointment as personal representative of Cooper's estate. In January 2023, Cooper filed a third amended complaint.[4] Respondents filed an answer in March 2023.

---

[4] The third amended complaint asserted causes of action for elder abuse, violations of the California Homeowner Bill of

7

In March 2023, the probate court issued Courtois special letters of administration.  However, in August 2023, the probate court denied Courtois's petition for probate with prejudice.  The court ruled that because Courtois drafted Cooper's will and was its sole beneficiary, a conclusive presumption of fraud applied pursuant to Probate Code section 21380, subdivisions (a) and (c).  The court further stated that Courtois's special letters of administration had expired in July 2023 and were not renewed.

In August 2023, Courtois filed another petition for probate, this time for Cooper's intestate estate.  In support of the petition, Cooper's brother and heir-at-law filed a declaration stating that he declined to act as administrator and he nominated Courtois for that role.

In September 2023, respondents filed another motion for judgment on the pleadings in this action.  Because the probate court had denied Courtois's petition for probate and letters testamentary with prejudice, respondents argued that Courtois lacked standing to maintain the claims asserted in the third amended complaint and judgment should be granted without leave to amend.

In her opposition, Courtois asserted that her pending petition for probate could cure the standing issues identified in the motion.  In their reply brief, respondents argued that Courtois was not qualified to be appointed as administrator of Cooper's estate.  Probate Code section 8402, subdivision (a)(3), provides that any competent adult is eligible to be appointed as administrator, subject to disqualification if there are grounds that would warrant the person's removal from office under

Rights, the Unfair Competition Law, breach of contract, and invasion of privacy.

8

Probate Code section 8502.  Such grounds include that the person has committed a fraud on the estate.  Respondents pointed out that the probate court had denied Courtois's previous petition for probate on grounds of fraud.  Respondents subsequently filed a supplemental request for judicial notice of the probate court's January 2024 ruling denying with prejudice Courtois's petition for letters of administration of the intestate estate.

In January 2024, the trial court granted the motion for judgment on the pleadings without leave to amend.  The court concluded that the judicially noticeable materials established that Courtois lacked standing, and Courtois failed to establish that the defect in standing could be cured.

The trial court entered judgment in February 2024.  Courtois timely appealed.

On November 1, 2024, the probate court granted an ex parte request for an order appointing Hitchman as a special administrator of Cooper's estate with "powers to substitute in as the Plaintiff, on behalf of the Estate of Austeene George Cooper, in the Los Angeles Superior Court Case No.: 20STCV22971 and to represent and act on behalf of the Estate in this litigation."  In January 2025, the probate court appointed Hitchman as administrator of Cooper's estate with full authority.[5]

---

[5]     We grant both parties' requests for judicial notice of court documents filed in this action and the probate action. (Evid. Code, §§ 452, subds. (c), (d), 459.)  "[A] reviewing court may take judicial notice of matters not before the trial court, including records of another court . . . ."  (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)  Respondents do not oppose the request for judicial notice of the probate court records establishing that Hitchman was appointed administrator.

9

In December 2024, Courtois filed a motion to substitute Hitchman as appellant in this matter, which respondents opposed.  We ordered that the motion would be considered concurrently with this appeal.

## DISCUSSION

## I.  On Remand, the Trial Court Should Consider Whether Leave To Amend To Substitute the Plaintiff Should Be Granted

A cause of action that survives a person's death passes to the decedent's successor in interest, "and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  (Code Civ. Proc., § 377.30.)  Although Courtois contends that she at one time had standing to pursue claims on behalf of Cooper's estate, she does not dispute that she lost standing after her special letters of administration expired and the probate court denied with prejudice the petition for probate of the will naming her as executor and sole beneficiary of the estate.  The complaint therefore "does not state facts sufficient to constitute a cause of action against" respondents (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii)), and the trial court properly granted the motion for judgment on the pleadings.  (See *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345 [" 'standing goes to the existence of a cause of action' "].)

However, we must consider whether leave to amend should have been granted.  We review a denial of leave to amend for abuse of discretion.  (*Wedemeyer v. Safeco Ins. Co. of America* (2008) 160 Cal.App.4th 1297, 1302.)

Courtois did not establish a valid basis for the trial court to grant her leave to amend in the proceedings below.  Courtois's

10

suggestion that the court abused its discretion because Cooper's brother "stated he would seek a Special Administrator appointment, but this matter was dismissed with prejudice before he could source and secure the appointment," is meritless. In support of this claim, she cites only the trial court's ruling, which contains no such statement. The record establishes that Cooper's brother expressly declined to act as administrator.

Yet, Courtois identifies a new fact on appeal—the probate court's appointment of Hitchman as administrator of Cooper's estate—which Courtois asserts would remedy the standing issues that formed the basis of the trial court's ruling on the motion for judgment on the pleadings.

" '[A] motion for judgment on the pleadings is the functional equivalent of a general demurrer.' " (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259.) And it is well established that when challenging an order sustaining a demurrer without leave to amend, an appellant may meet his or her burden of showing the complaint can be amended to state a viable cause of action "by identifying new facts or theories on appeal." (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004; accord, *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1049, fn. 2, 1061 [considering new factual assertions raised on appeal in deciding whether plaintiffs should have been granted leave to amend]; *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460 ["plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' [citation] in not granting leave to amend"].)

11

Respondents do not dispute that Hitchman would have standing to prosecute a survival action as administrator of Cooper's estate. They also concede that a plaintiff may usually advance facts and arguments in favor of amendment for the first time on appeal. However, they argue that Code of Civil Procedure section 430.41, subdivision (e)(1), limits the application of that rule in this case. The statute provides: "In response to a demurrer and prior to the case being at issue, a complaint or cross-complaint shall not be amended more than three times, absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action." (*Ibid*.) Because Courtois did not raise Hitchman's appointment as administrator before the trial court (and, indeed, could not have), respondents contend that this court must reject Courtois's arguments on appeal concerning Hitchman's appointment. We disagree.

Code of Civil Procedure section 430.41, subdivision (e)(1), expressly only applies *before* a case is at issue. Subdivision (e)(2) reiterates this limitation: "Nothing in this section affects the rights of a party to amend its pleading or respond to an amended pleading after the case is at issue." (*Id*., § 430.41, subd. (e)(2).) A case is "at issue" once an answer is filed. (*Geringer v. Blue Rider Finance* (2023) 94 Cal.App.5th 813, 817; *Netzley v. Hillstrom* (1954) 122 Cal.App.2d 417, 419.) Respondents filed an answer to the operative third amended complaint before moving for judgment on the pleadings. Thus, Code of Civil Procedure section 430.41, subdivision (e)(1), does not apply.

We therefore consider whether the "general rule allow[ing] great liberality at all stages of the proceeding in permitting the amendment of pleadings in order to dispose of cases upon their

12

merits" (*IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 461) allows us to consider post-judgment facts establishing that a person other than the plaintiff has standing to pursue the action.

In *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 (*Branick*), our Supreme Court rejected the claim that "plaintiffs should not be permitted to substitute a new plaintiff because their failure to name the new plaintiff in their original complaint was not a mistake." (*Id.* at p. 243.) The court observed that "[n]o such rule exists," and "courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest." (*Ibid.*) It likewise rejected the contention "that plaintiffs who never had standing may not substitute plaintiffs with standing" as a rule California courts had not followed. (*Id.* at p. 244.) However, the court reiterated an "important limitation" on amendments to substitute plaintiffs: "the plaintiff proposed to be substituted may not 'state facts which give rise to a wholly distinct and different legal obligation against the defendant.' " (*Id.* at p. 243, quoting *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 20.)

The court in *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 287, subsequently explained: "[A] named plaintiff's lack of standing at the beginning of an action is not necessarily fatal to continuation of the action. Although a complaint filed by a party who lacks standing is subject to demurrer, the rationale for the demurrer 'would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest. [Citation.]' [Citation.] Amendments to complaints under Code of Civil Procedure section 473,

13

subdivision (a), are liberally allowed to substitute in plaintiffs with standing for original plaintiffs without standing. [Citations.]  Code of Civil Procedure section 473, subdivision (a)(1), provides: 'The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . .'  As one authority explains: 'A suit is sometimes brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest.  Although the original complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and [the] amendment is freely allowed.  [Citation.]'  [Citation.]"

Thus, amendment to substitute the real party in interest for a plaintiff who lost or never had standing is generally permissible.  And, a plaintiff generally may raise new facts on appeal to show a complaint may be amended to remedy defects in the pleading.  However, as the facts supporting amendment to substitute the plaintiff were raised for the first time on appeal, the parties have not fully litigated whether leave to amend should be granted at this stage of proceedings, and the trial court did not have the opportunity to consider and rule on those arguments.  We remand to allow the trial court to determine in the first instance whether the circumstances of this case warrant granting leave to amend.  (*Branick*, *supra*, 39 Cal.4th at p. 243 [decision of whether leave to amend should be granted "properly belongs to the superior court"].)

We deny Courtois's motion to substitute Hitchman as the appellant in this appeal.  (Cal. Rules of Court, rule 8.36(a).)  As

14

respondents point out, Courtois fails to identify any decisions in which an appellate court granted a motion for substitution where the original appellant did not die or transfer her interest to another. Courtois is not the personal representative of Cooper's estate and thus has no interest to transfer. We conclude that seeking leave to amend in the trial court is the appropriate vehicle for the substitution Courtois seeks.

## II. The Trial Court Correctly Sustained the Demurrer Without Leave To Amend as To the Causes of Action Based on the Assignment of the Deed of Trust

Because Courtois's lack of standing does not necessarily end this matter, we reach her challenge to the trial court's order sustaining the demurrer without leave to amend as to the causes of action based on the assignment of the deed of trust. "A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81 (*Siliga*), disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13 (*Yvanova*).) We also review de novo whether the doctrine of claim preclusion applies to bar an action. (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 948.)

We conclude that the trial court correctly determined that claim preclusion barred the wrongful assignment causes of action and that they fail to state a claim.

15

## A. The trial court correctly concluded that claim preclusion barred the causes of action based on the assignment of the deed of trust

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) "Claim preclusion also ' "bars claims that *could have been* raised in the first proceeding . . . ." ' [Citations.]" (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191.) "The court may sustain a demurrer on claim preclusion grounds '[i]f all of the facts necessary to show that the action is barred are within the complaint or subject to judicial notice . . . .' [Citation.]" (*Ibid.*)

Courtois contends that the allegations of the first amended complaint remedied the "technical issues of the prior litigation," relying on *Goddard v. Security Title Insurance & Guarantee Co.* (1939) 14 Cal.2d 47. In *Goddard*, our high court observed that " 'even a judgment on general demurrer may not be on the merits, for the defects set up may be technical or formal, and the plaintiff may in such case by a different pleading eliminate them or correct the omissions and allege facts constituting a good cause of action, in proper form.' " (*Id.* at p. 52.) In the case before it, a federal court had granted a judgment of dismissal based on the framing of a cause of action and uncertain and insufficient pleadings, " 'not on a matter of substance which could not be remedied by another pleading.' " (*Id.* at p. 53.) The court

16

concluded that " '[s]uch a judgment is clearly not on the merits, and . . . is not *res judicata.*' " (*Ibid*.)

We construe Courtois's challenge as one to the final judgment on the merits prong of claim preclusion and consider any challenge to the other prongs of claim preclusion forfeited. "[I]t is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former." (*Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 334 (*Kanarek*).)

In the prior action, Cooper alleged that MERS's assignment of the deed of trust to The Bank of New York Mellon was void because it was recorded after the closing date of the securitized trust of which The Bank of New York Mellon was trustee. The Court of Appeal rejected this theory. In this action, Courtois again contends that the assignment of the deed of trust to The Bank of New York Mellon was void, this time on the grounds that MERS is a nominee acting as beneficiary without a right or interest in the debt, is not the beneficial holder of the deed of trust, and lacks the right to initiate or complete an assignment of the deed of trust or a nonjudicial foreclosure. She pleaded and argues that the assignment of the deed of trust from MERS to The Bank of New York Mellon failed because "MERS was contractually prohibited from transferring the debt by the terms of its agreement with [Countrywide]."

"[A] wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust."

17

(*Yvanova, supra,* 62 Cal.4th at p. 939.)  A wrongful foreclosure plaintiff does not have standing to challenge a *voidable* assignment.  (See *MTC Financial Inc. v. California Dept. of Tax & Fee Administration* (2019) 41 Cal.App.5th 742, 748 [*"Yvanova* stands for a narrow holding that 'a wrongful foreclosure plaintiff' can have standing to challenge a foreclosing entity's assigned interest where such assignment was void and not merely voidable' "].)  "When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so.  A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself."  (*Yvanova,* at p. 936.)

Before addressing whether the claims in the first amended complaint in this action again fail to establish that the assignment of the deed of trust is void and thus suffer from the same defect as the prior action, we briefly discuss MERS's function.  "MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights.  The notes may thereafter be transferred among members without requiring recordation in the public records.  [Citation.]  [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust.  [Citation.] Under the MERS System, however, MERS is designated as the

18

beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*), disapproved on another ground in *Yvanova*, *supra*, 62 Cal.4th at p. 939, fn. 13.)

Although MERS only held a legal title to the interests granted by Cooper, the deed of trust attached to and incorporated by reference in the first amended complaint stated that MERS, as beneficiary and nominee for the lender and its successors and assigns, had the power to exercise any or all interests. In other words, MERS was an agent of the original lender and its successors and assigns. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125; *Fontenot, supra*, 198 Cal.App.4th at p. 270.) "California courts have held that a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights. [Citations.] The deed of trust itself, attached to the . . . complaint, establishes as a factual matter that MERS has the authority to exercise all of the rights and interests of the lender. [Citations.] The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust." (*Siliga, supra*, 219 Cal.App.4th at pp. 83–84, fn. omitted; accord, *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 816; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1498 (*Herrera*), disapproved on another ground in *Yvanova, supra*, 62 Cal.4th at p. 939, fn. 13.)

Courtois contends that MERS could not assign the deed of trust without permission from the principal. In *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1157, the court addressed a similar challenge to MERS's authority to initiate a foreclosure proceeding. The court noted that the plaintiff "agreed by executing [the deed of trust] that MERS has the authority to initiate a foreclosure" and "[t]he deed of trust contains no suggestion that the lender or its successors and assigns must provide [the plaintiff] with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated. [Fn. omitted.]" (*Ibid*.) Similarly, here the deed of trust provided MERS with the authority to assign the deed of trust as agent of the lender and its assigns, and Courtois does not identify any language in the deed of trust requiring anyone to provide the borrower with any further assurance of MERS's authority to assign the deed of trust at the time MERS makes the assignment. Although MERS did not identify itself as nominee and agent of Countrywide and its successors and assigns in the assignment of the deed of trust, the deed of trust authorized MERS to assign the deed of trust in that capacity. *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, which Courtois cites, does not support the claim that this omission rendered the assignment of the deed of trust void.

Courtois's contention that Countrywide's sale of the note to CWALT, Inc. meant that MERS was no longer a nominee of the deed of trust is also unpersuasive. The first amended complaint alleged that MERS's terms and conditions provide for the deactivation of a deed of trust from its system if the note is transferred to a non-member, and that MERS ceased to have a role in the deed of trust following Countrywide's transfer of the

20

debt to CWALT, Inc. But the first amended complaint did not allege that CWALT, Inc. is not a member of MERS. We are not required to give credit to a legal conclusion. (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1193.) Moreover, even if the complaint could be amended to plead this fact, the deed of trust does not provide that the sale of the note to a non-member of MERS means that MERS is no longer the nominee and beneficiary of the instrument.

In *Herrera*, the plaintiffs similarly argued that MERS lacked the authority to assign a deed of trust because the successors and assigns of the original lender did not have an agency agreement with MERS. (*Herrera*, *supra*, 205 Cal.App.4th at p. 1505.) The court concluded "this does not necessarily defeat the foreclosure sale because plaintiffs agreed in the [deed of trust] that MERS had the right to exercise all rights of the lender, including foreclosing on and selling plaintiffs' property." (*Ibid*.) Courtois's attempt to distinguish *Herrera* on the ground that the allegation of the lack of agency there was conclusory, whereas her allegations are specific, is unavailing. The fact remains that the deed of trust did not limit MERS's authority to act as an agent for the lender and its assigns with respect to the sale of the note.[6]

---

[6] See also *Miller-Swift v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2019) 783 Fed.Appx. 750, 751 [plaintiff failed to plausibly allege that MERS " 'exited the chain of title' " due to assignment of note to non-MERS member; "[a]s a matter of California law, MERS had authority to assign the deed of trust"]; *Ratliff v. JPMorgan Chase Bank N.A.* (N.D.Cal., July 6, 2017, No. 17-CV-02155-EMC) 2017 WL 2876141, p. *8, fn. 3 [rejecting argument that MERS was stranger to the deed of trust after it

21

Courtois argues that MERS could not assign any beneficial interest in the note, relying on the alleged terms of a membership agreement by Countrywide and MERS entered in 2000. Yet, she failed to plead facts to support the claim that a borrower, or one suing on the borrower's behalf, has standing to enforce the terms of MERS's membership agreement. (See *Galvin v. U.S. Bank, N.A.* (1st Cir. 2017) 852 F.3d 146, 158 [district court correctly concluded "that a failure by MERS to adhere to its internal Rules of Membership might make the assignment voidable by a MERS member but does not make it void"]; *Monges v. Wells Fargo Bank, Nat. Ass'n* (D.Mass., Mar. 23, 2015, CIV. A. No. 13-11752-GAO) 2015 WL 1308146, p. *8 [plaintiffs "lack[ed] standing to challenge alleged violations of the MERS Membership Rules" where they did "not claim to have been parties to MERS's internal rules, nor do they demonstrate thirdparty beneficiary status"].)

Courtois claims that she is not attempting to enforce these terms but is instead arguing that the transaction is void because "MERS did not have legal authority to act . . . because it was contractually prohibited from doing so" based on that agreement. She conflates actions taken without legal authority with actions that are void. Under California law, a principal may ratify an unauthorized act taken by the agent. (*Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 703–704.) Courtois's argument to the contrary is unconvincing. She relies on Civil Code section 2310, which provides that "[a] ratification can be made only in the

---

was transferred to non-member of MERS, where deed of trust "specifically provides that MERS has the authority to act for the lender's successors and assigns"]; *Avila v. Wells Fargo Bank, National Association* (N.D.Cal., Dec. 23, 2016, No. C 16-05904 WHA) 2016 WL 7425925, p. *3 [same].

manner that would have been necessary to confer an original authority for the act ratified . . . ." The statute does not speak to the types of acts a principal may ratify. Courtois's citation to *Estate of Stephens* (2002) 28 Cal.4th 665, is unavailing for the same reason. (See *id*. at pp. 672–673 [oral ratification by principal of deed executed without authority was insufficient].) Courtois fails to establish that acts exceeding the authority granted by the principal are void, rather than voidable.

Courtois does not contend that the deed of trust granted MERS authority to exercise all the rights and interests of the lender without Countrywide's knowledge or consent.[7] Countrywide made numerous covenants and agreements in the deed of trust, and the cover page of the deed of trust indicates that it was recorded at Countrywide's request. Courtois fails to explain why we should disregard the authority granted to MERS in the deed of trust in favor of a prior agreement to which Cooper was not a party.

Because Courtois failed to establish that MERS's assignment of the deed of trust to The Bank of New York Mellon was void, "the new complaint contains the same defects as the former" with respect to the causes of action based on the assignment of the deed of trust. (*Kanarek*, *supra*, 108 Cal.App.3d at p. 334.) Claim preclusion therefore bars those causes of action.

---

[7] Even if she made such a claim, we would not be required to accept an allegation that conflicts with an exhibit to the complaint. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)

**B.** **The trial court correctly concluded that the causes of action based on MERS's assignment of the deed of trust fail to state a claim**

Even if claim preclusion did not apply, we would affirm the trial court's order sustaining the demurrer because the wrongful foreclosure, fraud, cancellation of instruments, slander of title, and quiet title causes of action rely on the allegation that the assignment was wrongful and void.[8] (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 998 [affirming order sustaining demurrer where "complaint fails to state a cause of action under any possible legal theory"].) For the reasons discussed, the first amended complaint failed to plead adequate facts to support that the assignment was void.

---

[8] The wrongful foreclosure cause of action alleged that The Bank of New York Mellon was "not the valid, legal creditor" and Courtois was "prejudiced and harmed by being subject to demands by an invalid creditor." The fraud cause of action alleged that MERS "knew, or should have known, it was no longer the nominee of the lender, or beneficiary solely as nominee, when it recorded the 2011 [assignment of the deed of trust]" and concealed that its role had been terminated. The cancellation of instruments cause of action alleged that the deed upon sale must be voided because it relied upon MERS's false assignment of the deed of trust. The slander of title cause of action alleged that respondents "knew the assignment was false, and knew the sale of the property was wrongful and oppressive, but they moved forward despite the legal issues surrounding the wrongful foreclosure" and knew that "recording of the Trustee's Deed Upon Sale based on the wrongful foreclosure would damage and harm [Courtois]." The quiet title cause of action alleged that The Bank of New York Mellon claimed an interest in the subject property through the disputed assignment of the deed of trust and could not prove any interest in the note or deed of trust.

Courtois also fails to identify any facts that could remedy the defect in these causes of action. (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609 [burden is on plaintiff to show reasonable possibility the complaint can be amended to state a cause of action].)

## DISPOSITION

We affirm the order sustaining the demurrer to the first amended complaint in part without leave to amend. We reverse the judgment and remand the matter to allow the trial court to consider whether leave to amend the complaint to name LeeAnn Hitchman as plaintiff in her capacity as administrator of the estate of Austeene Cooper should be granted. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

GAAB, J.*

---

\*      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.